**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| B.E. TECHNOLOGY, L.L.C.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>TWITTER, INC.,<br><br>　　　　Defendant. | C.A. No. _____<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff B.E. Technology, L.L.C. ("B.E.") hereby asserts the following claims for patent infringement of United States Patent Nos. 8,549,410 (the "'410 Patent"), 8,549,411 (the "'411 Patent"), and 8,769,440 (the "'440 Patent" and together with the '410 Patent and '411 Patent, the "Patents-in-Suit") against Defendant Twitter, Inc. ("Twitter"), and alleges as follows:

**NATURE OF THE ACTION**

1.　　This is an action for patent infringement under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.*, seeking damages and other relief under 35 U.S.C. § 281, *et seq.*

**PARTIES**

2.　　B.E. is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Memphis, Tennessee.

3.　　On information and belief, Twitter is a corporation organized and existing under the laws of Delaware with its principal place of business at 1355 Market Street, Suite 900, San Francisco, California 94103.  Twitter may be served with process through its registered agent, The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801.

## JURISDICTION AND VENUE

4.  This is an action for patent infringement arising under the Patent Laws of the United States, Title 35 of the United States Code.

5.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action concerns the infringement of U.S. patents.

6.  On information and belief, Twitter is subject to this Court's specific and general personal jurisdiction because it conducts substantial business in the District of Delaware, directly and/or through intermediaries, including: (i) committing at least a portion of the acts of infringement alleged herein in this District, and (ii) regularly conducting or soliciting business in this District, engaging in other persistent courses of conduct in this District including maintaining continuous and systematic contacts in this District, availing itself of the privileges of doing business in this District.

7.  Venue is proper in this District under 28 U.S.C. § 1400(b) because Twitter is a Delaware corporation and therefore resides in this District.

## BACKGROUND

8.  In 1995, David Hoyle, a computer programmer in New Orleans, recognized that people used computers at both work and home and that their inability to access their information regardless of which computer they were using was a problem—how could people access their information without being forced to return to the specific hardware they used?

9.  Mr. Hoyle realized that no one was addressing this problem. In the mid-1990s, the industry was primarily concerned with solving the network issue of providing faster Internet access in homes. Mr. Hoyle decided to create a way for people to access their information online independent of the device they were using.

10. To capitalize on his ideas, Mr. Hoyle formed B.E. in August 1997. He developed software that would allow computer users to retrieve information in a concise, quick, and organized way from any computer. This software comprised a toolbar that could be utilized on the desktop of both a home computer and a work computer and that would enable a user to connect all their files.

11. Mr. Hoyle further developed personalized products and services that delivered digital networking technologies for users and enabled users to connect to a ubiquitous network. These developments pre-dated cloud-based computing by 10 years. This development further allowed users to connect to a broad range of electronic devices—computers, printers, disk drives, phones, cameras, appliances, software and services—in a universal network.

12. Mr. Hoyle wanted to provide his products free of charge through online real-time reactionary advertising. At the time of his invention, Mr. Hoyle recognized that online real-time reactionary advertising had not been discovered and presented a technical challenge concerning the gathering and distribution of user information. Mr. Hoyle was ultimately able to leverage his software developments to solve this technical challenge in a novel way.

13. Online advertising began in 1994 with text-based or animated banner ads. Advertisers simply paid for pages viewed. While advertisers were able to track how many times an ad was viewed and clicked across multiple websites, they could not deliver real time advertising based on particular information of the specific user from the information gathered at this time.

14. Targeted advertising is a form of advertising directed towards audiences with certain traits, based on the product or person the advertiser is promoting. It is a way of placing ads based on demographics, on the consumers' previous buying history or on behavior.

15.     Mr. Hoyle sought to create real-time targeted advertising based on, for example, keywords contained on web pages visited by a user.  To achieve this, he leveraged the ubiquitous network technology he developed which permitted the gathering of user information from any computer.  Mr. Hoyle added to this technology databases that combined both the demographics and reactive usage to improve targeted advertising.  These technology improvements to then existing computer systems allowed for the ability to provide real-time, reactionary advertisements.  In other words, ads could now be inserted at the right moment to display the right ad for the right user—e.g., a woman in Denver searching online for a new car would be provided ads of Denver car dealers.  Mr. Hoyle designed technology that enabled electronic devices to connect to a ubiquitous network and then provided responsive advertising to a computer user based on particular information gathered in real time regarding what the user was doing.

16.     Mr. Hoyle filed for patent protection in July 1998 and was eventually granted 10 patents covering his technologies.

17.     In contrast, Twitter did not start using Twitter Ads, its real-time advertising based on keyword targeting in timelines, until April 2013.  *See* https://blog.twitter.com/en_us/a/2013/introducing-keyword-targeting-in-timelines.html. Twitter's infringement of Mr. Hoyle's patents paved the way for Twitter to generate millions of dollars in revenue.

**PATENTS-IN-SUIT**

**Background**

18.     Mr. Hoyle is the inventor of the '410 Patent, entitled "Method of Reactive Targeted Advertising," which the U.S. Patent & Trademark Office duly issued on October 1, 2013.  B.E. is the owner by assignment of the '410 Patent.  It is valid and enforceable, and was duly issued in

full compliance with the Patent Laws of the United States, Title 35 of the United States Code. A true and correct copy of the '410 Patent is attached hereto as Exhibit 1.

19. Mr. Hoyle is the inventor of the '411 Patent, entitled "Method of Reactive Targeted Advertising," which the U.S. Patent & Trademark Office duly issued on October 1, 2013. B.E. is the owner by assignment of the '411 Patent. It is valid and enforceable, and was duly issued in full compliance with the Patent Laws of the United States, Title 35 of the United States Code. A true and correct copy of the '411 Patent is attached hereto as Exhibit 2.

20. Mr. Hoyle is the inventor of the '440 Patent, entitled "Method of Reactive Targeted Advertising," which the U.S. Patent & Trademark Office duly issued on July 1, 2014. B.E. is the owner by assignment of the '440 Patent. It is valid and enforceable, and was duly issued in full compliance with the Patent Laws of the United States, Title 35 of the United States Code. A true and correct copy of the '440 Patent is attached hereto as Exhibit 3.

21. The Patents-in-Suit describe and claim a particular way of providing responsive advertising to a user. For example, claim 1 of the '410 Patent recites:

> A method comprising permitting a computer user to access one or more servers via a network; transferring a copy of software to a computer associated with the computer user, the software being configured to run on the computer to display advertising content and record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding one or more programs run on the computer; determining a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to the one or more servers; determining that one or more keywords of a plurality of keywords are associated with a displayed webpage with the plurality of keywords being stored in a memory associated with the one or more servers; selecting an advertisement to be displayed on the computer, the selection based at least on the one or more keywords together with information associated with the unique identifier identifying the computer, receiving a request for an advertisement from the computer accessing the web page; and providing the selected advertisement for display on the computer in response to the received request.

22. Claim 1 of the '411 Patent recites:

5

A method comprising permitting a computer user to access one or more servers via a network; transferring a copy of software to a computer associated with the computer user, the software being configured to run on the computer to display advertising content and record computer usage information associated with utilization of the computer, the software being configured to allow user messaging capabilities between the user and one or more users, wherein when the program runs on the computer such that one of a number of unique identifiers is recorded by the software; determining a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to the one or more servers; determining the computer usage of the computer; retrieving information from a user demographic database associated with the computer user; storing the retrieved information in memory associated with one or more servers; associating the retrieved information with the user; selecting an advertisement to be displayed on the computer, the selection based at least on the usage of the computer together with information associated with the unique identifier identifying the computer, receiving a request for an advertisement from the computer accessing the web page; and providing the selected advertisement for display on the computer in response to the received request.

23.     Claim 1 of the '440 Patent recites:

A method comprising permitting a computer user to access one or more servers via a network; transferring a copy of software to a computer associated with the computer user, the software being configured to run on the computer to display advertising content and record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding one or more programs run on the computer; determining a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to the one or more servers; selecting an advertisement to be displayed on the computer, the selection based at least on information associated with the unique identifier identifying the computer; receiving a request for an advertisement from the computer; and providing the selected advertisement for display on the computer in response to the request.

24.     The claims of the Patents-in-Suit are not directed to abstract ideas, and do not merely recite the performance of some well-known business practice from the pre-Internet world along with the requirement to perform it on the Internet or on a computer.  Nor are the claims of the Patents-in-Suit merely attempting to limit a method of organizing human activity or an idea itself to a particular technological environment.  The claims of the Patents-in-Suit are expressly directed to providing real-time targeted advertising based on keywords contained on web pages visited by a user.

25. The claims of the Patents-in-Suit, when viewed as a whole, including as an ordered combination, are not merely the recitation of well-understood, routine, or conventional technologies or components. The claimed inventions were not well-known, routine, or conventional at the time of the invention, over twenty years ago, and represent specific improvements over the prior art and existing systems and methods. The claimed technology (e.g., providing real-time targeted advertising based on keywords contained on web pages visited by a user) and the technical features that allowed for the invention to be utilized was not known in the prior art at the time of the invention, let alone well-known, routine, or conventional. Moreover, the reactive targeting advertising provided by the claimed inventions is handled in real time, rather than simply as a part of building a set of advertisements for later display to the user, and improved targeted online advertising because it permitted the display of advertising that is relevant to what the user is doing at any particular time. The specific limitations of the claims ground the claims in the inventive technological improvement by requiring, e.g., targeted advertising based on keywords contained on web pages visited by a user.

26. The claims provide targeted advertising based on keywords contained on web pages visited by a user. (*See, e.g.*, Claim 1, '410 Patent ("[D]etermining that one or more keywords of a plurality of keywords are associated with a displayed webpage with the plurality of keywords being stored in a memory associated with the one or more servers.").)

27. The detailed description of the invention explains the relative advantages of real-time reactionary advertising:

> As will be appreciated by those skilled in the art, the reactive targeting provided by client software application 10 is handled in real time, rather than simply as a part of building a set of advertisements for later display to the user. This permits the display of advertising that is relevant to what the user is doing at any particular time. Thus, if the user is using the computer to search for information on stocks, then client software application 10 can detect this (whether by recognizing the web site being accessed, the keywords used in the

7

web pages being accessed, the program being executed, or some other aspect of the user's search) and can display an advertisement that is relevant to this topic, whether it be for a stock brokerage, a stock exchange, an investment group, or some other organization.

('410 Patent, 20:24–37.)

28. Real-time reactionary advertising is based on particular information gathered in real-time regarding what a user is doing; in contrast to static information about a user such as demographic information or personal information. The Patents-in-Suit explain in technical detail how information about what a user is doing at a particular time is gathered, which was a technical hurdle that had to be overcome to implement the claimed method. In particular, the Patents-in-Suit describe a specially programmed graphical user interface that works in conjunction with an advertisement and management module to both monitor a user's use of a computer and provide reactionary advertisements. ('410 Patent, 8:12–60.) The specification provides detailed technical disclosures regarding how the various modules collecting user information, data bases (which store advertisements) and computers and servers work together to accomplish the claimed method steps. (*Id.,* 20:5–23.)

29. The claimed inventions are tethered to technical improvement. The claims are consistent with the specification and detail not only the general desire for reactive-type advertisements but the specific manner in which "reactive" advertising is achieved.

## COUNT I
## (INFRINGEMENT OF THE '410 PATENT)

30. B.E. repeats and re-alleges the allegations of Paragraphs 1–29 above as if fully set forth herein.

31. On information and belief, at least Twitter advertising products and features, including at least Twitter Ads campaign, Twitter Promote Mode, and Twitter Ads for agencies,

have directly infringed at least claim 1 of the '410 Patent, either literally or under the doctrine of equivalents, by using a method of providing advertising based on the keywords in a webpage.

32. As just one non-limiting example, Twitter infringes claim 1 of the '410 Patent through the performance of each step of that method claim. For example, Twitter's app is connected to a Twitter server which permits a computer user to access one or more servers via a network. *See, e.g.,* https://blog.twitter.com/engineering/en_us/topics/infrastructure/2017/the-infrastructure-behind-twitter-scale.html; https://developer.twitter.com/en/docs/tutorials/consuming-streaming-data. When a user uses Twitter's app, that involves transferring a copy of software to a computer associated with the computer user. *See, e.g.,* https://business.twitter.com/en/solutions.html; https://developer.twitter.com/en/docs/ads/analytics/api-reference/active-entities; https://developer.twitter.com/en/docs/ads/analytics/overview. Twitter's software is configured to run on a computer to display advertising content and to record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding one or more programs run on the computer. *See, e.g.,* https://twitter.com/en/privacy. Twitter determines a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to Twitter's servers through: Twitter's GET followers/ids which returns a cursored collection of user IDs for every user following the specified user which is a unique identifier associated with the user, *see, e.g.,* https://developer.twitter.com/en/docs/accounts-and-users/follow-search-get-users/api-reference/get-followers-ids; Twitter's GET account/setting which returns settings (including current trend, geo and sleep time information) for the authenticating user which is a unique identifier associated with the computer, *see, e.g.,* https://developer.twitter.com/en/docs/accounts-

and-users/manage-account-settings/api-reference/get-account-settings; and unique identifiers associated with the computer such as browser cookie IDs, mobile device IDs, etc., which require the ability to associate a computer ID with a user ID, *see, e.g.,* https://twitter.com/en/privacy. Twitter's Log Data IDs, device IDs, and application IDs which are associated with the computer determine the computer usage of the computer and Twitter identifies information sent from the Twitter app to Twitter's servers. *See, e.g.,* https://twitter.com/en/privacy. Twitter determines that one or more keywords of a plurality of keywords are associated with a displayed webpage with the plurality of keywords being stored in a memory associated with Twitter's servers through keyword targeting. *See, e.g.,* https://business.twitter.com/en/targeting/keywords.html; https://business.twitter.com/en/help/campaign-setup/campaign-targeting/keyword-targeting.html. By selecting ads based on keywords, Twitter connects to users based on words and phrases they have recently Tweeted or searched for on Twitter. *See., e.g.,* https://business.twitter.com/en/targeting/keywords.html. Twitter selects an advertisement to be displayed on the computer, the selection is based at least on the one or more keywords together with information associated with the unique identifier identifying the computer. *See., e.g.,* https://business.twitter.com/en/targeting/keywords.html. Twitter's servers then receive a request for an advertisement from the computer accessing the web page, https://developer.twitter.com/en/docs/ads/campaign-management/overview, and provide the selected advertisement for display on the computer in response to the received request. *See, e.g.,* https://developer.twitter.com/en; https://developer.twitter.com/en.

33. As a result of Twitter's unlawful infringement of the '410 Patent, B.E. has suffered damage. B.E. is entitled to recover from Twitter the damages adequate to compensate for such infringement, which have yet to be determined.

10

## COUNT II
## (INFRINGEMENT OF THE '411 PATENT)

34. B.E. repeats and re-alleges the allegations of Paragraphs 1–33 above as if fully set forth herein.

35. On information and belief, at least Twitter advertising products and features, including at least Twitter Ads campaign, Twitter Promote Mode, and Twitter Ads for agencies, have directly infringed at least claim 1 of the '411 Patent, either literally or under the doctrine of equivalents, by using a method of providing advertising based on the keywords in a webpage.

36. As just one non-limiting example, Twitter infringes claim 1 of the '411 Patent through the performance of each step of that method claim. For example, Twitter's app is connected to a Twitter server which permits a computer user to access one or more servers via a network. *See, e.g.,* https://blog.twitter.com/engineering/en_us/topics/infrastructure/2017/the-infrastructure-behind-twitter-scale.html; https://developer.twitter.com/en/docs/tutorials/consuming-streaming-data. When a user uses Twitter's app, that involves transfer a copy of software to a computer associated with the computer user. *See, e.g.,* https://business.twitter.com/en/solutions.html; https://developer.twitter.com/en/docs/ads/analytics/api-reference/active-entities; https://developer.twitter.com/en/docs/ads/analytics/overview. Twitter's software is configured to run on a computer to display advertising content and to record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding one or more programs run on the computer. *See, e.g.,* https://twitter.com/en/privacy. Twitter's software is configured to allow user messaging capabilities between the user and one or more users wherein when the program runs on the computer such that one of a number of unique identifiers is recorded by Twitter's software. *See, e.g.,*

https://developer.twitter.com/en/docs/tweets/post-and-engage/overview. Twitter determines a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to Twitter's servers through: Twitter's GET followers/ids which returns a cursored collection of user IDs for every user following the specified user which is a unique identifier associated with the user, *see, e.g.,* https://developer.twitter.com/en/docs/accounts-and-users/follow-search-get-users/api-reference/get-followers-ids; Twitter's GET account/setting which returns settings (including current trend, geo and sleep time information) for the authenticating user which is a unique identifier associated with the computer, *see, e.g.,* https://developer.twitter.com/en/docs/accounts-and-users/manage-account-settings/api-reference/get-account-settings; and unique identifiers associated with the computer such as browser cookie IDs, mobile device IDs, etc., which require the ability to associate a computer ID with a user ID, *see, e.g.,* https://twitter.com/en/privacy. Twitter's Log Data IDs, device IDs, and application IDs which are associated with the computer determine the computer usage of the computer and Twitter identifies information sent from the Twitter app to Twitter's servers. *See, e.g.,* https://twitter.com/en/privacy. Twitter reterieves information from a user demographic database associated with the computer user and stores the retrieved information in memory associated with Twitter's server and associates the retrieved information with the user. *See, e.g.,* https://business.twitter.com/en/targeting.html. By selecting ads based on keywords Twitter connects to users based on words and phrases they have recently Tweeted or searched for on Twitter, Twitter selects an advertisement to be displayed on the computer, the selection is based at least on the one or more keywords together with information associated with the unique identifier identifying the computer. *See., e.g.,* https://business.twitter.com/en/targeting/keywords.html. Twitter's servers then receive a request

for an advertisement from the computer accessing the web page, https://developer.twitter.com/en/docs/ads/campaign-management/overview, and provide the selected advertisement for display on the computer in response to the received request, https://developer.twitter.com/en; https://developer.twitter.com/en.

37. As a result of Twitter's unlawful infringement of the '411 Patent, B.E. has suffered damage. B.E. is entitled to recover from Twitter the damages adequate to compensate for such infringement, which have yet to be determined.

## COUNT III
### (INFRINGEMENT OF THE '440 PATENT)

38. B.E. repeats and re-alleges the allegations of Paragraphs 1–37 above as if fully set forth herein.

39. On information and belief, at least Twitter advertising products and features, including at least Twitter Ads campaign, Twitter Promote Mode, and Twitter Ads for agencies, have directly infringed at least claim 1 of the '440 Patent, either literally or under the doctrine of equivalents, by using a method of providing advertising based on the keywords in a webpage.

40. As just one non-limiting example, Twitter infringes claim 1 of the '440 Patent through the performance of each step of that method claim. Twitter's app is connected to a Twitter server which permits a computer user to access one or more servers via a network. *See, e.g.,* https://blog.twitter.com/engineering/en_us/topics/infrastructure/2017/the-infrastructure-behind-twitter-scale.html; https://developer.twitter.com/en/docs/tutorials/consuming-streaming-data. When a user uses Twitter's app, that involves transferring a copy of software to a computer associated with the computer user. *See, e.g.,* https://business.twitter.com/en/solutions.html; https://developer.twitter.com/en/docs/ads/analytics/api-reference/active-entities; https://developer.twitter.com/en/docs/ads/analytics/overview. Twitter's software is configured to

13

run on a computer to display advertising content and to record computer usage information associated with utilization of the computer, wherein the computer usage information includes data regarding one or more programs run on the computer. *See, e.g.,* https://twitter.com/en/privacy. Twitter determines a unique identifier associated with the computer, wherein the identifier uniquely identifies information sent from the computer to Twitter's servers through: Twitter's GET followers/ids which returns a cursored collection of user IDs for every user following the specified user which is a unique identifier associated with the user, *see, e.g.,* https://developer.twitter.com/en/docs/accounts-and-users/follow-search-get-users/api-reference/get-followers-ids; Twitter's GET account/setting which returns settings (including current trend, geo and sleep time information) for the authenticating user which is a unique identifier associated with the computer, *see, e.g.,* https://developer.twitter.com/en/docs/accounts-and-users/manage-account-settings/api-reference/get-account-settings; and unique identifiers associated with the computer such as browser cookie IDs, mobile device IDs, etc., which require the ability to associate a computer ID with a user ID, *see, e.g.,* https://twitter.com/en/privacy. Twitter's Log Data IDs, device IDs, and application IDs which are associated with the computer determine the computer usage of the computer and Twitter identifies information sent from the Twitter app to Twitter's servers. *See, e.g.,* https://twitter.com/en/privacy. Twitter selects an advertisement to be displayed on the computer, the selection is based at least on the one or more keywords together with information associated with the unique identifier identifying the computer. *See., e.g.,* https://business.twitter.com/en/targeting/keywords.html. Twitter's servers then receive a request for an advertisement from the computer, https://developer.twitter.com/en/docs/ads/campaign-management/overview, and provides the

14

selected advertisement for display on the computer in response to the received request, https://developer.twitter.com/en; https://developer.twitter.com/en.

41. As a result of Twitter's unlawful infringement of the '440 Patent, B.E. has suffered damage. B.E. is entitled to recover from Twitter the damages adequate to compensate for such infringement, which have yet to be determined.

## PRAYER FOR RELIEF

WHEREFORE, B.E. respectfully requests that this Court enter judgment in its favor as follows:

a. Holding that Twitter has directly infringed literally and/or under the doctrine of equivalents, one or more claims of the '410 Patent, the '411 Patent, and the '440 Patent;

b. Holding that B.E. is entitled to pre-suit damages consistent with, *e.g.*, 35 U.S.C. § 287;

c. Awarding B.E. the damages to which it is entitled under 35 U.S.C. § 284 for Twitter's past infringement, including a reasonable royalty;

d. Awarding B.E. costs and expenses in this action;

e. Awarding B.E. pre- and post-judgment interest on its damages; and

f. Awarding B.E. such other and further relief in law or in equity as this Court deems just and proper.

## JURY DEMAND

B.E., under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any and all issues so triable by right.

Dated: May 7, 2020

OF COUNSEL:

Mark Raskin
Robert Whitman
KING & WOOD MALLESONS LLP
500 5th Avenue, 50th Floor
New York, New York 10110
(212) 319-4755
mark.raskin@us.kwm.com
robert.whitman@us.kwm.com

BAYARD, P.A.

/s/ Stephen B. Brauerman
Stephen B. Brauerman (#4952)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com

*Attorneys for Plaintiff*
*B.E. Technology, L.L.C.*